UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DIGIART, LLC,

        Plaintiff,

v.                                                                                                Case No.: 6:22-cv-494-WWB-RMN

DANNY CASALE,

        Defendant.
_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 50), Plaintiff's Response (Doc. 53), and Defendant's Reply (Doc. 54). For the reasons set forth below, Defendant's Motion will be granted.

**I.    BACKGROUND**

Defendant, Danny Casale, is an artist known for his surreal, humorous, and crudely drawn digital animations. (Doc. 50-1, ¶ 5).[1] In January 2021, Defendant entered into an

---

[1] In reviewing the evidence in this case, the Court became concerned with the conduct of Defendant's counsel, Jordan Susman, during the depositions in this proceeding. He made numerous aggressive, rude, disparaging, and unnecessary comments to both deponents and opposing counsel. (*See, e.g.*, Doc. 50-2 at 81, 90; Doc. 50-3 at 17). Mr. Susman is reminded that when appearing before this Court he is bound by the Florida Rules of Ethics. M.D. Fla. R. 2.01(e). As relevant, the Rules Regulating the Florida Bar specifically prohibit attorneys from "engag[ing] in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis." Rule 4-8.4(d). Furthermore, "as provided in the Guidelines for Professional Conduct, a lawyer always should interact with parties, counsel, witnesses, jurors or prospective jurors, court personnel, and judges with courtesy and civility, and should avoid undignified or discourteous conduct that is degrading to the court or the proceedings." *The Fla. Bar v. Norkin*, 132 So. 3d 77, 90 (Fla. 2013). This Court will not tolerate the lack of civility evidenced in the deposition transcripts. Mr. Susman is hereby placed on notice that this

agreement with non-party The Art Plug LLC ("**Art Plug**"), operated by Marcel Katz, to act as his east coast representative. (*Id.* ¶¶ 6–7; Doc. 50-2 at 6–7, 9, 94–95). Based on the partnership with Art Plug, Katz asked Defendant if he would be interested in partnering with a new entity, which ultimately became Plaintiff DigiART, LLC ("**DigiART**"), to create and sell non-fungible tokens ("**NFTs**"). (Doc. 50-1, ¶¶ 11–14; Doc. 50-2 at 22–24; Doc. 53-6 at 2). Defendant expressed interest in the project. (Doc. 50-2 at 97–98).

After some discussions regarding sales proceeds and royalties from secondary sales—which can represent a significant portion of the proceeds from the sale of NFTs—, Plaintiff's representative e-mailed Defendant a draft agreement. (Doc. 50-1, ¶¶ 12, 16, 18; Doc. 50-2 at 32, 98, 101; Doc. 50-4 at 22). The draft contained several blanks, including the effective date, the name of the artist, and the allocation of net sale proceeds. (Doc. 50-2 at 47, 103–106; Doc. 50-4 at 32–33). In the body of the e-mail, Plaintiff's representative stated that the profit split would be "50/50" "on initial NFT drops" with "[a]ll secondary market royalties" going to Defendant. (Doc. 50-2 at 101). The e-mail did not contain an effective date for the agreement. (*Id.*). Defendant signed and returned the draft agreement, still containing blanks, on April 30, 2021. (Doc. 50-1, ¶ 23; Doc. 50-2 at 101, 108–111; Doc. 50-4 at 36).

On May 3, 2021, Katz forwarded the signed agreement to other individuals involved in DigiART. (Doc. 50-2 at 42–43, 115). When he sent the document, the blank for effective date had been filled with "May 2nd, 2021[,]" Defendant's information was included as the "Artist," and the "Allocation of Net Proceeds" provided for a fifty-fifty split

---

Court can and will report any further such conduct in this case or any other case before this Court to the proper licensing authorities.

2

without any differentiation between initial sales and secondary sales. (*Id.* at 116). The agreement had also been signed on behalf of the company. (*Id.* at 119). Defendant did not receive a countersigned copy of the agreement until March 2022, at which time he discovered that the blanks in the agreement he signed had been filled. (Doc. 50-1, ¶ 28; Doc. 50-4 at 11; Doc. 50-4 at 41).

In March 2021, Defendant began creating and selling NFTs culminating in the Coolman's Universe ("**CMU**") NFT Project. (Doc. 50-1, ¶¶ 9–10). Between the purported effective date of the agreement at issue in this case and February 2022, Katz and other DigiART employees were aware of Defendant's NFT project. (Doc. 50-2 at 78, 123; Doc. 50-3 at 10–11, 15–16, 19–20, 33, 39, 133–134; Doc. 50-4 at 67–69, 72, 74–75). Defendant states that despite this knowledge, Plaintiff did not attempt to enforce the agreement, inform him that he was in breach of the agreement, or otherwise acknowledge any contractual relationship or obligations between Plaintiff and Defendant. (Doc. 50-1, ¶¶ 32–71). Katz testified that he was "not sure" but he "probably told [Defendant] to chill out" when he found out about his work outside the purported agreement but concedes that he never made any such statement in writing and that it probably occurred after Defendant launched the CMU. (Doc. 50-2 at 78, 81; Doc. 50-3 at 45, 74). DigiART admits that it did not inform Defendant that his release would be a violation of any agreement until months after it became aware of the CMU NFT Project. (Doc. 50-4 at 67–68, 72–74, 107–108).

## II.     LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it may "affect the outcome of the suit under the governing law."  *Id.*  "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007).  Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quotation omitted).  The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).  Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor."  *Allen*, 495 F.3d at 1314.

## III.     DISCUSSION

On March 8, 2022, DigiArt filed the Complaint (Doc. 1) alleging claims for breach of contract (Count I), promissory estoppel (Count II), and fraud in the inducement (Count III).  (*See generally id.*).  Defendant seeks summary judgment on all three counts.

### A. Breach of Contract

First, Defendant argues that summary judgment must be granted as to Count I because no valid contract was formed. To prevail on a breach of contract claim under Florida law, "a plaintiff must establish the following elements: '(1) a valid contract, (2) a material breach, and (3) damages.'" *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 113 F. Supp. 3d 1221, 1223 (M.D. Fla. 2014) (quoting *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013)). "[T]he question of whether a valid contract exists is a threshold question of law that may be properly decided by the court." *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014).

"[I]t is a fundamental principle of contracts that in order for a contract to be binding and enforceable, there must be a meeting of the minds on all essential terms and obligations of the contract." *Silk Road Trading & Shipping Co. v. World Fuel Servs. Corp.*, 572 F. Supp. 3d 1296, 1303 (S.D. Fla. 2021) (quotation omitted); *see also Kolodziej*, 774 F.3d at 741 ("[M]utual assent is a prerequisite for the formation of any contract." (citing *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989)). "While a 'meeting of the minds' may not be necessary as to every term for a contract to be formed, mutual assent is necessary as to essential terms." *LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1327 (M.D. Fla. 2012) (quoting *David v. Richman*, 568 So. 2d 922, 924 (Fla. 1990)). A court evaluates the existence of mutual assent "by analyzing the parties' agreement process in terms of offer and acceptance." *Kolodziej*, 774 F.3d at 741. "A valid contract—premised on the parties' requisite willingness to contract—may be 'manifested through written or spoken words, or inferred in whole or in part from the parties' conduct.'" *Id.* (quoting *L & H Constr. Co. v. Circle Redmont, Inc.*, 55 So. 3d 630,

634 (Fla. 5th DCA 2011)). "The party seeking to enforce a purported agreement has the burden of establishing assent to the essential terms by the opposing party." *Triton Stone Holdings, L.L.C. v. Magna Bus., L.L.C.*, 308 So. 3d 1002, 1007 (Fla. 4th DCA 2020).

First the Court must determine if the missing terms—effective date and the allocation of net proceeds—are essential terms to the agreement. "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis." *Lanza v. Damian Carpentry, Inc.*, 6 So. 3d 674, 676 (Fla. 1st DCA 2009). In this case, the parties do not dispute that the allocation of proceeds as to initial sales is an essential term. Instead, Plaintiff argues that the effective date and allocation of secondary sales are not essential terms.

With respect to allocation of secondary sales, Plaintiff's argument is simply that there could be no sales on the secondary market and, therefore, this term is not essential. However, the same can be said of the initial sales as well. There is no dispute, however, that a secondary market for NFTs, like the ones at issue in this case, exists and could be the source of significant revenue. Simply because it might not have been an essential term to Plaintiff does not mean that it was not an essential term to the agreement. Plaintiff has not offered any legal authority in support of its argument and, as Defendant points out, pricing terms are generally essential terms. *See Technocable Wiring Specialist, Inc. v. Genesis Networks Telecom Servs., LLC*, No. 8:16-cv-2590-T, 2019 WL 13144188, at *3 (M.D. Fla. Feb. 12, 2019) (noting that in forming a joint venture the allocation of profits and losses would be an essential term to the agreement); *Uphoff v. Wachovia Sec., LLC*, No. 09-80420-CIV, 2009 WL 5031345, at *3 (S.D. Fla. Dec. 15, 2009) ("An example of an essential term is price, or in this case, the amount of the bonus for which Plaintiff has

brought suit."); *Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*, No. 06-22774-CIV, 2007 WL 628133, at *2 (S.D. Fla. Feb. 26, 2007) ("[T]he essential terms of a joint venture agreement include, among others, a right to share in the profits and a duty to share in any losses which may be sustained."); *Acosta v. Dist. Bd. of Trs. of Mia.-Dade Cmty. Coll.*, 905 So. 2d 226, 228 (Fla. 3d DCA 2005) ("[P]rice is generally recognized as an essential element to a contract."); *Jacksonville Port Auth. V. W.R. Johnson Enters., Inc.*, 624 So. 2d 313, 315 (Fla. 1st DCA 1993) ("Failure to sufficiently determine quality, quantity, or price may preclude the finding of an enforceable agreement."). Therefore, the Court finds that the allocation of proceeds on both the initial and secondary sales were essential terms.

Turning to the effective date, Plaintiff has not offered any argument or legal authority for why the effective date of a term contract would not be an essential term. Rather, Plaintiff simply argues that it must not have been important to Defendant because he never asked about it. Plaintiff's argument is misplaced for two reasons. First, material terms are those terms that are essential to the performance and enforcement of the contract, not just those terms that a party considers material. *Material Term*, Black's Law Dictionary (11th ed. 2019) ("A contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done."); *United States v. Mower*, 110 F. Supp. 3d 1196, 1200 (D. Utah 2015); *see also Wisekal v. Lab'y Corp. of Am.*, No. 12-80806-CIV, 2016 WL 4154781, at *3 (S.D. Fla. Mar. 8, 2016). Plaintiff has not offered any support for the proposition that a contracting party's failure to inquire into a term or to treat a specific term as material at the time of contracting renders the term non-essential to the agreement. Thus, the Court is not persuaded that

Defendant's failure to ask when the contract term began is evidence that the term was not material.

Furthermore, the agreement at issue in this case is a term contract for exclusive performance.[2] Under these circumstances, where exclusive performance is anticipated for a certain period of time, when that period commences is a term essential to the performance and enforcement of the agreement. *See Winter Haven Citrus Growers Ass'n v. Campbell & Sons Fruit Co.*, 773 So. 2d 96, 97 (Fla. 2d DCA 2000) (holding that the moving party "failed to prove the existence of an enforceable oral contract because it failed to prove that [the parties] had agreed upon such material terms as . . . the time for performance"); *Holloway v. Gutman*, 707 So. 2d 356, 358 (Fla. 5th DCA 1998) (holding that the length of the term in a term contract was an essential term); *cf. Watts v. Divine Savior Sch., Inc.*, No. 22-21428-CIV, 2022 WL 3357505, at *2 (S.D. Fla. Aug. 15, 2022); *Radde v. BMS Intermediaries, Inc.*, No. 18-23274-Civ, 2019 WL 8892618, at *3 (S.D. Fla. Mar. 6, 2019). Again, Plaintiff has failed to offer any legal authority in support of its argument that the effective date is not an essential term. At best, Plaintiff argues there is a material issue of fact regarding the nature of the term, but then fails to direct this Court to any record evidence or to specify what precisely the factual dispute regarding the materiality of the term might be. Therefore, the Court finds that the effective date, in this specific contract, was also an essential term.

Having determined that the allocation of proceeds on both initial and secondary sales and the effective date are essential terms, the Court must now determine if the

---

[2] Although Plaintiff argues that the exclusivity provision is not material, this provision was not challenged in Defendant's Motion and, therefore, the Court does not consider the materiality or mutuality thereof in resolving the Motion.

circumstances surrounding the execution of the agreement preclude a finding that no meeting of the minds occurred as to these terms. With respect to the allocation of proceeds on initial sales, the record is replete with evidence from which a reasonable fact finder could hold that the parties agreed to the essential term of allocation. The e-mail that Defendant received and clearly reviewed stated that the allocation would be 50/50 and the written agreement eventually reflected the same understanding. On this term, Defendant has not established his entitlement to summary judgment.

With respect to effective date, Plaintiff has pointed out that subsequent to the execution of the agreement, Defendant contacted Katz to discuss ideas for potential NFTs and specifically asked "[h]ow many NFTs do we need from me?" (Doc. 53-7 at 1). This is evidence Defendant felt, at the very least, that there was an agreement in place as of May 26, 2021. (*Id.*). Accordingly, the Court also finds that material issues of fact preclude a finding that there was no meeting of the minds as to the effective date of the agreement.

Nevertheless, Plaintiff has come forward with no evidence supporting a meeting of the minds as to the split of proceeds on secondary sales. To be clear, the agreement provides for an even split of all proceeds, including secondary sales. This is materially different than the term that was in the e-mail sent to Defendant. Plaintiff has not offered any other evidence of a meeting of the minds regarding any split of profits on secondary sales. Thus, there is no evidence from which a reasonable finder of fact could find a meeting of the minds as to this term. "As a general rule, presence of blanks in a contract is fatal to the enforcement if the blanks occur in a provision dealing with an essential term of the contract." *Innkeepers Int'l, Inc. v. McCoy Motels, Ltd.*, 324 So. 2d 676, 678 (Fla. 4th DCA 1975; *see also Jacksonville Port Auth.*, 624 So. 2d at 315 ("So long as any

essential matters remain open for further consideration, there is no completed contract." (quotation omitted)). Because there is no evidence to support a finding that the parties reached an agreement on this essential term, the Court finds that Defendant is entitled to summary judgment as to Count I.[3]

### B.     Promissory Estoppel

Defendant also argues that Plaintiff's promissory estoppel claim cannot proceed because it is based solely on the failed contract negotiations and there is no evidence that Plaintiff acted in reliance on any promise by Defendant. "In Florida, the doctrine of promissory estoppel 'applies when there is (1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced.'" *Bloch v. Wells Fargo Home Mortg.*, 755 F.3d 886, 889 (11th Cir. 2014) (quoting *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 96 (Fla. 2013)).

As to Defendant's first argument, "[p]romissory estoppel is a quasi-contract claim that is generally considered an alternative to a breach of contract claim, allowing a party to enforce a promise not supported by consideration." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1291–92 (S.D. Fla. 2021) (quotation omitted). It is

---

[3] The allocation of proceeds on the secondary market, although an essential pricing term, could potentially be severed from the remaining terms under Florida law and leave an enforceable agreement as to the allocation of initial sale proceeds. *See Daytona Sys., LLC v. Indag Gesellschaft Fur Industriebedarf MBH & Co. Retriebs KG*, No. 6:09-cv-1222-Orl, at *2 (M.D. Fla. Dec. 14, 2010) (noting that "district courts are empowered to save the unoffending portions of a contract in cases in which the unenforceable provision does not encompass the "entire fulfillment of the contract and where, with the illegal portion eliminated, there still remain valid legal promises on one side which are wholly supported by valid legal promises on the other" (quotation omitted)). However, because Plaintiff did not raise this argument in its Response or request such relief, the Court will not consider or address severance in this Order.

only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails. *Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997). As set forth above, there has been no showing that an express agreement exists in this case, therefore, Defendant's argument that Plaintiff's promissory estoppel claim is barred by the agreement fails. To the extent that Defendant argues Plaintiff's claim was not pleaded in the alternative simply because it references promises made during contract negotiations, this Court disagrees. (*See* Doc. 1, ¶¶ 6, 70–81).

In the alternative, Defendant argues that Plaintiff has no evidence of detrimental reliance. In response, Plaintiff directs the Court to evidence that it lost out on other business opportunities as a result of its reliance on Defendant's representation that he was entering an agreement with Plaintiff. (Doc. 53 at 13). Defendant argues, however, that this theory of detrimental reliance was not advanced in the Complaint and is first argued in response to summary judgment. This Court agrees. The Complaint explicitly relies on the expenditure of time and resources to promote and market Defendant's art with respect to the promissory estoppel claim and makes no allegations regarding missed business opportunities. (Doc. 1, ¶¶ 6, 33, 80–81). "It is well settled that '[a] plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment.'" *Varazo v. Keiser Corp.*, 754 F. App'x 918, 919 (11th Cir. 2018) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)); *see also Cacciamani v. Target Corp.*, 622 F. App'x 800, 804–05 (11th Cir. 2015); *Moise v. Mia.-Dade Cnty.*, No. 17-20993-CIV, 2018 WL 4445111, at *12 (S.D. Fla. Aug. 22, 2018) ("Federal courts also routinely hold that a plaintiff may not assert a new theory supporting an existing claim in

response to a motion for summary judgment."). Thus, because Plaintiff first raises a theory of promissory estoppel based on foregone business opportunities in its response to summary judgment, this claim is not properly before the Court and will not be considered.

To the extent that Plaintiff also argues that it expended resources to educate Defendant on the NFT market and to promote him on ArtPlug's website, Plaintiff fails to direct the Court to any record evidence supporting these propositions. (Doc. 53 at 13–14). At best, the record shows that Katz discussed NFTs and gave advice to Defendant on the NFT market generally, but Katz failed to specify that this was done in reliance on an agreement between Plaintiff and Defendant or in his capacity as a representative of Plaintiff. (Doc. 53-6 at 4:5–5:20). Plaintiff cites no record evidence as to when or why Defendant was featured on the ArtPlug website or how this was done on behalf of DigiART, as opposed to pursuant to Defendant's agreement with ArtPlug. Finally, even if this was sufficient evidence to create an issue of fact as to reliance, Plaintiff fails to specify how this is linked to any detrimental change in position sufficient to support its promissory estoppel claim on this theory. *See, e.g.*, *Polo N. Country Club, Inc. v. Wells Fargo Bank, N.A.*, No. 9:16-cv-80432, 2016 WL 11819825, at *5 (S.D. Fla. June 24, 2016). Simply put, Plaintiff has not directed this Court to any evidence in the record that Katz and ArtPlug acted on behalf of Plaintiff pursuant to a belief that an agreement existed with Defendant and would not have otherwise engaged in the same course of conduct absent such a belief. Therefore, the Court finds that Defendant is also entitled to summary judgment on Count II.

### C. Fraud in the Inducement

Defendant argues that he is also entitled to summary judgment as to Count III, which alleges a claim for fraud in the inducement, because it arises out of the alleged contract and Plaintiff cannot establish damages. Plaintiff failed to respond to Defendant's arguments regarding Count III. Accordingly, the Court deems Count III abandoned and will grant summary judgment in Defendant's favor as to Count III. *See Powell v. Am. Remediation & Envtl., Inc.*, 61 F. Supp. 3d 1244, 1253 n.9 (S.D. Ala. 2014) ("[W]here the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned."); *see also Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009).

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 50) is **GRANTED**.
2. The Clerk is directed to enter judgment is favor of Defendant, and against Plaintiff, on each of its claims. Thereafter, the Clerk shall close this case.

**DONE AND ORDERED** in Orlando, Florida on September 15, 2023.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record